Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| BANCO POPULAR DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>JB INTERNATIONAL CORP.; JORGE BARED RODRÍGUEZ, KASSANDRA FREYRE ACEVEDO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; JB JEWELRY GROUP<br><br>Apelantes | TA2026AP00333 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.: SJ2022CVV00675 (503)<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de mayo de 2026.

Comparecen ante este tribunal apelativo, JB International Corp. (JB International); JB Jewelry Group (JB Jewelry); el Sr. Jorge Bared Rodríguez (señor Bared Rodríguez), la Sra. Kassandra Freyre Acevedo (señora Freyre Acevedo) y la Sociedad Legal de Gananciales (SLG) compuesta por ambos(en conjunto, los apelantes) mediante el recurso de apelación de epígrafe solicitándonos que revoquemos la *Sentencia* dictada y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 5 de febrero de 2026. Mediante este dictamen, el foro primario determinó que los apelantes han incurrido en incumplimiento contractual con las obligaciones pactadas con el Banco Popular de Puerto Rico (BPPR o apelado). En consecuencia, condenó a los apelantes a pagar las sumas reclamadas por el BPPR en la demanda.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El 1 de febrero de 2022, el Banco Popular de Puerto Rico (BPPR o apelado) presentó una *Demanda* sobre cobro de dinero en contra de los apelantes.[1] En esta alegó que, el 23 de diciembre de 2008, JB International suscribió un pagaré mediante el cual BPPR le extendió el *Préstamo número 101-2340801-9002* (en adelante, Préstamo) por la suma principal de $151,000, a ser utilizada bajo sus términos y condiciones. Además, señaló que dicho pagaré devengaría intereses fluctuantes a razón del 2.00% sobre el *Prime Rate* hasta la fecha de su vencimiento.

Puntualizó que, como colateral para asegurar el pago y cumplimiento puntual de las obligaciones bajo del Préstamo, los apelantes ofrecieron las siguientes garantías:

> i. Garantía Ilimitada y Continua, suscrita por JB Jewelry Group Corp. el 22 de diciembre de 2008 y reconocida mediante affidávit número 517 ante la Notario Christian M. Echevarri Junco.
>
> ii. Garantía Ilimitada y Continua, suscrita por Jorge Bared Rodríguez, Kassandra Freyre Acevedo y la Sociedad Legal de Bienes Gananciales compuesta por ambos el 22 de diciembre de 2008 y reconocida mediante affidávit número 518 ante la Notario Christian M. Echevarri Junco.

No obstante, manifestó que los apelantes han dejado de pagar las mensualidades vencidas de dicho pagaré, por lo que declaró la deuda vencida, líquida y exigible, adeudándose a BPPR, al 21 de octubre de 2021, la suma principal de $125,249.89, más la cantidad de $86,775.78 por concepto de intereses acumulados, más la cantidad de $15,100 por concepto de costas, gastos y honorarios de abogado incurridos. Así, solicitó que se condenara solidariamente a los apelantes a satisfacer las sumas reclamadas. Además, peticionó que se condenara a pagar cualquier remanente insoluto mediante el

---

[1] *Véase,* el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 1.

embargo y eventual venta y ejecución de cualquier bien mueble e inmueble de los apelantes.

El 4 de abril de 2022, los apelantes presentaron una *Moción Solicitando Desestimación de la Demanda.*[2] En esencia, esbozaron que el caso de epígrafe era una acción en cobro de un pagaré de naturaleza mercantil con fecha de vencimiento del 23 de enero de 2012. A tales efectos, señalaron que dicho pagaré le era aplicable un término prescriptivo de tres (3) años, y que no fue hasta el 1 de febrero de 2022, que el BPPR presentó su causa de acción. Por tal razón, argumentaron que, aun tomándose como cierto los hechos alegados en la demanda, esta dejó de exponer una reclamación que justificara la concesión de un remedio y procedía su desestimación.

Por su parte, el 25 de mayo de 2022, el apelado presentó su *Oposición a Moción solicitando Desestimación de la Demanda.*[3] Mediante esta, indicó que surgía del Préstamo que este no satisfacía los requisitos de un instrumento negociable y que las acciones de los apelantes derrotaban cualquier presunción de que el mismo fuera un contrato mercantil. Por ello, razonó que la presente acción de cobro se derivaba de un contrato regulado por el Código Civil de 1930, *infra*. A tales efectos, arguyó que le era aplicable el término prescriptivo de quince (15) años.

Examinado los escritos, el 5 de junio de 2023, el TPI emitió y notificó una *Resolución* declarando No Ha Lugar a la moción desestimatoria.[4] En desacuerdo, el 13 de junio de 2023, los apelantes presentaron una *Urgente Moción de Reconsideración*; sin embargo, fue declarada No Ha Lugar por el TPI el 1 de mayo de 2025.[5]

---

[2] SUMAC TPI, Entrada núm. 12.
[3] SUMAC TPI, Entrada núm. 18.
[4] SUMAC TPI, Entrada núm. 23.
[5] SUMAC TPI, Entradas núms. 24 y 33.

Así las cosas, el 3 de junio de 2024, el BPPR presentó una *Moción de Sentencia Sumaria.*[6] En esta formuló seis (6) hechos incontrovertidos que, a su entender, no estaban en controversia y permitían resolver sumariamente el caso a su favor. En esencia, esbozó que no existía controversia de que JB International obtuvo del BPPR un préstamo a término por $151,000 e intereses sobre el balance insoluto del principal y que dicha deuda monetaria fue garantizada solidariamente por JB Jewerly, el señor Bared Rodríguez, la señora Freyre Acevedo y la Sociedad Legal de Gananciales compuesta por ambos. El petitorio fue acompañado de los siguientes documentos: Pagaré, Garantías Ilimitadas y Continuas, Enmienda al Pagaré o Contrato de Préstamo, Declaración Jurada suscrita por el Sr. Rafael Miguel de Sevilla Rodríguez, Historial de Pago y Carta de Cobro.

De igual forma, indicó que era incuestionable que los apelantes han dejado de pagar el Préstamo, a pesar de la reclamación a esos fines. Por lo cual arguyó que, no existiendo controversia sobre la obligación existente y que la deuda reclamada era líquida, vencida y exigible, procedía disponer sumariamente del caso.

Por su parte, en esta misma fecha, los apelantes presentaron ante este Tribunal de Apelaciones un recurso de apelación bajo el alfanumérico KLAN202400543.[7] Atendido el recurso, un Panel hermano acogió el mismo como uno de *certiorari* y denegó expedir el auto solicitado.[8]

Tras varios incidentes procesales, el 9 de diciembre de 2024, el TPI emitió una *Orden* en la que dejó en suspenso la adjudicación

---

[6] SUMAC TPI, Entada núm. 34.
[7] SUMAC TPI, Entrada núm. 36.
[8] *Íd.*

de la moción de sentencia sumaria y a su vez, ordenó a los apelantes presentar su contestación a la demanda.[9]

Conforme a este mandato, el 26 de diciembre de 2024, los apelantes presentaron su *Contestación a la Demanda.*[10] Allí, aceptaron que JB International suscribió el Préstamo con el BPPR, por $151,000. De igual forma, admitieron lo alegado en cuanto a las garantías ilimitadas y continúas suscritas por JB Jewelry, el señor Bared Rodríguez y la señora Freyre Acevedo. No obstante, alegaron afirmativamente que cualesquiera reclamaciones sobre el pagaré se encontraban prescritas.

Luego de varios trámites procesales, 10 de junio de 2025, los apelantes presentaron su *Oposición a Moción de Sentencia Sumaria.*[11] En esencia, sostuvieron que existían al menos dos controversias genuinas y sustancias de hechos materiales que impedían una adjudicación sumaria. Primeramente, indicaron que existía una disputa sobre si el Préstamo fue de índole puramente comercial o; si por el contrario, su destino principal fue de carácter personal o civil. Por otra parte, adujeron que existía duda sobre la exactitud del monto adeudado ya que realizó pagos directamente a la entidad FB Leonard & Co., Inc. (FB Leonard), y que no fueron debidamente aplicados o reconocidos en los estados de cuentas presentados.

Examinados los escritos, el 5 de febrero de 2026, el foro de primera instancia emitió y notificó la *Sentencia* apelada.[12] Mediante esta, consignó seis (6) determinaciones de hechos que permitían resolver las controversias sumariamente, las cuales transcribimos a continuación:

---

[9] SUMAC TPI, Entrada núm. 46.
[10] SUMAC TPI, Entrada núm. 47.
[11] SUMAC TPI, Entrada núm. 61.
[12] SUMAC TPI, Entrada núm. 63.

6

**HECHOS QUE NO EST[Á]N EN CONTROVERSIA**

1. El 23 de diciembre de 2008, la demandante le concedió a la codemandada JB International Corp. un préstamo a término por la suma principal de $151,000.00 e intereses fluctuantes sobre el balance de principal debido a razón de 2% sobre el "Prime Rate" hasta su saldo, identificado como el Préstamo #101-2340801-9002 (en adelante, "el Préstamo #101- 2340801-9002").

2. Para garantizar las obligaciones contractuales de la codemandada JB International Corp. para con la demandante, incluyendo el Préstamo #101-2340801- 9002, el 22 de diciembre de 2008 los codemandados Jorge Bared Rodríguez y Kassandra Freyre Acevedo, por sí y en representación de la Sociedad Legal de Bienes Gananciales Compuesta por Ambos, y JB Jewelry Group, Corp., suscribieron documentos de Garantía Ilimitada y Continua.

3. El 18 de diciembre de 2009, la demandante y los demandados suscribieron un documento de Enmienda al Pagaré o Contrato de Préstamo mediante el cual la primera, a solicitud de los segundos, les concedió una moratoria de 60 días en el pago de principal del Préstamo #101-2340801-9002.

4. Los demandados han dejado de pagar el Préstamo #101-2340801-9002 según pactado y, en su consecuencia, han incurrido en incumplimiento de dicha obligación contractual para con la demandante, adeudándose solidariamente por los demandados a la demandante al 30 de mayo de 2024 la suma principal de $125,249.89, más la cantidad de $115,233.60 por concepto de intereses acumulados a dicha fecha y los cuales continúan acumulándose diariamente, más la cantidad estipulada de $15,100.00 por concepto de costas, gastos y honorarios de abogado, más los cargos, recargos y gastos que se acumulen hasta la fecha de su total y completo pago.

5. Las sumas reclamadas por la demandante a los demandados están vencidas, son líquidas y exigibles.

6. La demandante ha realizado gestiones de cobro a la demandada, resultando estas infructuosas.

A base de estos hechos, la prueba documental sometida; así como la totalidad del expediente de autos, y a tenor con el derecho aplicable, juzgó que la causa de acción no estaba prescrita y que procedía dictar la sentencia sumaria en cobro de dinero. En primer lugar, expuso que la naturaleza del préstamo ya se había atendido previamente por el tribunal y que en este caso era aplicable el término prescriptivo de quince (15) años que disponía el Código Civil

de Puerto Rico de 1930, *infra*. Además, esbozó que quien invoque el Código de Comercio, *infra*, tenía el peso de la prueba sobre su aplicabilidad y que había concluido que los apelantes no demostraron que la controversia giraba en torno a un "acto de comercio". Por otra parte, en cuanto a la exactitud del monto adeudado determinó que más allá de una aseveración general del señor Bared Rodríguez que surgía de la declaración jurada, los apelantes no acompañaron recibos o algún documento que específicamente detallara cuántos pagos se efectuaron, cuándo se realizaron y/o las cuantías específicas que controvirtieran el monto señalado.

En virtud de lo anterior, resolvió que no había controversia sobre que los apelantes dejaron de pagar el Préstamo según pactado y; por tanto, incurrieron en incumplimiento de sus obligaciones contractuales. Además, juzgó que no existía controversia sobre las sumas reclamadas por el BPPR y que estas estaban vencidas, eran líquidas y exigibles.

En desacuerdo, el 17 de febrero de 2026, los apelantes presentaron su *Moción solicitando Reconsideración*.[13] En respuesta, el 3 de marzo de 2026, el BPPR presentó su *Oposición a "Moción solicitando Reconsideración"*.[14] Atendido los escritos, el 5 de marzo de 2026, el TPI emitió y notificó una *Resolución* declarando No Ha Lugar a la moción de reconsideración.[15]

Aún inconforme, los apelantes acuden ante esta *Curia* imputándole al foro de primera instancia haber incurrido en los siguientes errores:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OMITIR EL ANÁLISIS DE NEGOCIABILIDAD REQUERIDO POR LA SECCIÓN 2-104(a) DE LA LEY DE TRANSACCIONES COMERCIALES Y APLICAR EN SU LUGAR EL CÓDIGO CIVIL, CUANDO LA LTC ES LEY ESPECIAL DE

---

[13] SUMAC TPI, Entrada núm. 64.
[14] SUMAC TPI, Entrada núm. 66.
[15] SUMAC TPI, Entrada núm. 67.

APLICACIÓN PREFERENTE Y EL PAGARÉ DE AUTOS, PAGADERO 'A LA ORDEN DE BANCO POPULAR DE PUERTO RICO' CON VENCIMIENTO EL 23 DE ENERO DE 2012 SATISFACE PLENAMENTE SUS REQUISITOS, EXTINGUIÉNDOSE LA ACCIÓN EL 23 DE ENERO DE 2015 BAJO LA SECCIÓN 2-118(a).

SEGUNDO ERROR: ERRÓ EL TRIBUNAL AL CONCLUIR QUE EL PAGARÉ NO ES UN INSTRUMENTO NEGOCIABLE BAJO LA SECCIÓN 2-104(a) DE LA LTC, IGNORANDO QUE EL PROPIO BANCO DEMANDANTE LO TRANSFIRIÓ AL MERCADO SECUNDARIO DE CRÉDITOS, CONDUCTA EXCLUSIVA DE INSTRUMENTOS NEGOCIABLES, Y QUE LAS CLÁUSULAS ACCESORIAS INCORPORADAS NO SUBORDINAN NI CONDICIONAN LA PROMESA INCONDICIONAL DE PAGO PAGADERA 'A LA ORDEN' QUE CONSTITUYE SU ESENCIA.

TERCER ERROR: ERRÓ EL TRIBUNAL AL ATRIBUIR CARÁCTER CONCLUYENTE Y EFECTO DE COSA JUZGADA A UNA DETERMINACIÓN INTERLOCUTORIA CUYA REVISIÓN FUE DENEGADA DISCRECIONALMENTE POR EL TRIBUNAL DE APELACIONES, IGNORANDO DOCTRINA REITERADA QUE ESTABLECE QUE LA DENEGATORIA DE CERTIORARI NO CONSTITUYE ADJUDICACIÓN EN LOS MÉRITOS NI CREA PRECEDENTE VINCULANTE.

CUARTO ERROR: ERRÓ EL TRIBUNAL AL DISPONER SUMARIAMENTE DEL CASO EN PRESENCIA DE CONTROVERSIAS REALES Y SUSTANCIALES SOBRE HECHOS MATERIALES, INCLUYENDO: (A) LA NATURALEZA MERCANTIL DEL PRÉSTAMO, ACREDITADA MEDIANTE DECLARACIÓN JURADA; (B) LA EXACTITUD DEL MONTO ADEUDADO EN VIRTUD DE PAGOS DIRECTOS AL INVERSIONISTA JF LEONARD NO ACREDITADOS POR BPPR; Y (C) LA DISCREPANCIA EN LA FECHA DE VENCIMIENTO DEL PAGARÉ.

El 6 de abril de 2026, emitimos una *Resolución* concediéndole a la parte apelada hasta el 5 de mayo de 2026 para expresarse. Llegado ese día, se cumplió con lo ordenado por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados las comparecencias de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Mecanismo de Sentencia Sumaria**

En nuestro ordenamiento jurídico, el mecanismo de la sentencia sumaria está gobernado por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, la cual autoriza a los

tribunales a dictar sentencia de forma sumaria si, mediante declaraciones juradas u otro tipo de prueba, se demuestra la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024) Específicamente, la Regla 36.1, 32 LPRA Ap. V, R. 36.1, atiende la solicitud de este tipo de disposición a favor de la parte reclamante en un pleito, mientras que la Regla 36.2, 32 LPRA Ap. V, R. 36.2, permite su petición a favor de la parte contra la que se reclama. En ambas reglas se establece lo siguiente:

> **Regla 36.1. A favor de la parte reclamante**
>
> Una parte que solicite un remedio podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.
>
> **Regla 36.2. A favor de la parte contra quien se reclama**
>
> Una parte contra la cual se haya formulado una reclamación podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

Entretanto, la Regla 36.3, 32 LPRA Ap. V, R. 36.3, dispone los requisitos de contenido de la moción de sentencia sumaria y de la contestación a esta, entre otras particularidades del procedimiento. Estos requisitos, como los párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, no son un mero formalismo, ni constituye un simple requisito mecánico sin sentido. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013).

En un primer plano, mediante el uso del mecanismo discrecional de la sentencia sumaria, se aligera la tramitación de un caso, puesto que, ante la ausencia de controversia de hechos, al

tribunal solo le corresponde aplicar el derecho. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014). Así, sirve para propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no requieren la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una o varias controversias de derecho. *Íd.*

Este tipo de resolución procede en aquellos casos en los que no existen controversias **reales y sustanciales** en cuanto a los **hechos materiales y, por lo tanto, lo único que resta es aplicar el derecho**. *Consejo Tit. v. Rocca Dev. Corp.*, et als., 215 DPR ___, 2025 TSPR 6 (2025); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). La precitada Regla 36 de las de Procedimiento Civil, *supra*, dispone, en esencia que, para permitir este tipo de adjudicación, resulta necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia surja de que no existe controversia real y sustancial, respecto a ningún hecho esencial y pertinente; y en adición, que se deba dictar sentencia sumaria como cuestión de derecho. *Consejo Tit. v. Rocca Dev. Corp., et als.,* supra; *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 109. En este sentido, solo procede dictarla cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y que el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 109-110.

Es decir, por un lado, al promovente de la moción le toca establecer su derecho con claridad y demostrar que no existe controversia en cuanto a ningún hecho material, o sea ningún componente de la causa de acción. *Íd.*, a la pág. 110. Por el otro, al

oponente le corresponde establecer que existe una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia sumaria. *Íd.* Cabe recordar que, en este contexto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Íd.* Mas específicamente, el oponente debe controvertir la prueba presentada y no debe cruzarse de brazos; pues de lo contrario, se expone a que se acoja la solicitud de sentencia sumaria y se le dicte en contra. *Ramos Pérez v. Univisión,* 178 DPR 200, 214-215 (2010). Esto significa que está obligado a contestar de forma detallada y específica aquellos hechos pertinentes que demuestran la existencia de una controversia real y sustancial que requiere dilucidarse en un juicio. *Íd.,* a la pág. 215. En este ejercicio, debe presentar declaraciones juradas o documentos que pongan en controversia los hechos alegados por el promovente, recordando que tampoco puede descansar en meras alegaciones, sino que debe proveer evidencia sustancial de los hechos materiales en disputa. *Íd.* No obstante, no oponerse a la solicitud de sentencia sumaria no implica ni que procederá dictarla obligatoriamente, si existe una controversia legítima sobre un hecho material, ni que corresponderá dictarla a favor de su proponente si no procede en derecho. *Íd.*

Ahora bien, se han establecido ciertas reglas limitantes de la discreción en el uso de la moción de sentencia sumaria. Por un lado, la determinación en cuanto a esta debe guiarse por un principio de liberalidad a favor de la parte que se opone, lo cual persigue evitar la privación del derecho de todo litigante a su día en corte cuando existen controversias de hechos legítimas y sustanciales que deben ser resueltas. *Íd.,* a las págs. 216-217. Por el otro, como norma general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y

esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de derecho no procede. *Oriental Bank v. Perapi,* supra, a las págs. 26-27. Dicho esto, cabe indicar que la moción de sentencia sumaria no está excluida en ningún tipo de pleito, puesto que, sin importar cuán complejo sea un pleito, puede dictarse si de una moción de sentencia sumaria bien fundamentada surge que no hay controversia sobre hechos materiales. *Meléndez González et al. v. M. Cuebas,* supra, a la pág. 112.

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones, sobre la procedencia de la sentencia sumaria, **debemos utilizar los mismos criterios que el Tribunal de Primera Instancia**. *Meléndez González et al. v. M. Cuebas,* supra, a la pág. 115. En *Meléndez González,* el Tribunal Supremo consignó el siguiente estándar:

> "Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo, supra,* a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia **y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo**. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición **cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civi**l, supra, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo,* supra.

> Tercero, **en el caso de revisión de una Sentencia dictada sumariamente**, el Tribunal de Apelaciones **debe revisar si en realidad existen hechos materiales en controversia**. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> Cuarto y, por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia **aplicó correctamente el Derecho a la controversia**." (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.

Por último, esta norma ha sido reiterada año tras año por nuestro Tribunal Supremo, en donde ha establecido que los foros apelativos nos encontramos en la misma posición que los foros de primera instancia al evaluar la procedencia de una **sentencia sumaria**. *Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Birriel Colón v. Econo y otro*, 2023 TSPR 120, 213 DPR 80, 91-92 (2023). Sin embargo, nuestra función se limita a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Íd.* Cónsono a ello, también se ha establecido que los tribunales revisores estamos llamados a examinar el expediente *de novo* de la manera más favorable hacia la parte que se opone a la solicitud de sentencia sumaria en el foro primario y realizando todas las inferencias permisibles a su favor. *Soto y otros v. Sky Caterers,* supra; *Birriel Colón v. Econo y otro*, supra, a las págs. 91-92.

**Instrumentos negociables**

La Ley núm. 208-1995, 19 LPRA sec. 401 *et seq.*, conocida como la Ley de Transacciones Comerciales, (Ley núm. 208-1995) procura simplificar y aclarar el derecho que rige las transacciones

comerciales; permitir la continua expansión de prácticas comerciales por medio de costumbres, usos y acuerdos entre las partes, entre otras cosas. Esta ley dispone que un instrumento negociable es una promesa u orden incondicional de pago de una cantidad específica de dinero con o sin intereses u otros cargos descritos que: (1) es pagadero al portador o a la orden; (2) si es pagadero a la presentación o en una fecha específica.; y (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, [...]. Sección 2-104 de la Ley núm. 208-1995, 19 LPRA sec. 504.

Cónsono con lo anterior, una promesa u orden es pagadera al portador si la misma:

> (1) especifica que es pagadera al portador o a la orden del portador o de otra forma indica que la persona en posesión de la promesa u orden tiene derecho al pago;
> (2) no designa un tomador;
> (3) especifica que es pagadera a, o a la orden de, efectivo o de otra forma indica que no es pagadera a una persona identificada. Sección 2-109 de la Ley núm. 208-1995, 19 LPRA sec. 509.

La Sección 1-201 de la Ley núm. 208-1995, define el término portador como "la persona en posesión de un instrumento, documento de título, o valor con certificado pagadero al portador o endosado en blanco". 19 LPRA sec. 451(5). Además, sabido es que un pagaré al portador se transfiere por la mera entrega y, desde entonces, el tenedor o portador está activamente legitimado para reclamar su satisfacción. *Lozada Merced v. Registrador*, 100 DPR 99, 104 (1971). Véase, además, *Liechty v. Descartes Saurí*, 109 DPR 496, 502 (1980). Dicho esto, la mera posesión del pagaré equivale al título y le confiere legitimación activa al portador para presentarlo al cobro. *Navedo Torres v. Registrador*, 87 DPR 794, 798 (1963); Véase, además, *Vendrell v. Torres Aguiló*, 85 DPR 873, 876 (1962). A tales efectos:

> [U]na acción para exigir el cumplimiento de la obligación contraída por una parte de pagar un pagaré que es pagadero en una fecha específica deberá

> comenzarse dentro de los tres (3) años siguientes a la fecha o fechas de vencimiento estipuladas en el pagaré o, si la fecha de pago se acelera, dentro de los tres (3) años siguientes a la fecha de vencimiento acelerado.
>
> […]
>
> La prescripción se interrumpirá por la demanda u otro género de interpelación judicial hecho al deudor, por el reconocimiento de las obligaciones, o por la renovación del instrumento en que se funde el derecho del acreedor. […]. Sección 2-118 de la Ley núm. 208-1995, 19 LPRA sec. 518(a) y (i).

Ahora bien, es meritorio destacar que un instrumento negociable contiene muchas características similares a un documento de crédito no negociable. M.R. Garay Auban, *Derecho Cambiario de Estados Unidos y Puerto Rico*, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, pág. 3. En particular, ambos se crean como consecuencia de un contrato o negocio jurídico que pueden ser vendidos, comprados, donados, heredados o enajenados por todos los medios permitidos por ley. *Íd.* No obstante, entre las principales diferencias de ambos instrumentos está que:

> [Los instrumentos] no negociables se derivan de que un documento de crédito no negociable es una evidencia documental de una obligación que nace, se transforma y se extingue fuera del instrumento. Por el contrario, un instrumento negociable es una obligación incorporada a un documento, que para extinguirse o transformarse requiere en muchos casos que el documento mismo se extinga o se transforma. […]. *Íd.*, a la pág. 4.

**Teoría General de los Contratos**

Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[16] Artículo 1206 del Código Civil, 31 LPRA sec. 3371; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Artículo 1213 del Código Civil, 31 LPRA sec. 3391; *Díaz*

---

[16] Destacamos que mediante la Ley núm. 55-2020 se aprobó el nuevo Código Civil de Puerto Rico. No obstante, el contrato en controversia fue otorgado previo a su vigencia. Por lo cual aplicaremos el Código Civil de 1930 y la jurisprudencia interpretativa.

*Ayala et al. v. ELA*, 153 DPR 675 (2001). Por tanto, cualquiera que sea la forma en que se haya celebrado el contrato, una vez concurren las condiciones esenciales para su validez, ellos son obligatorios. Artículo 1230 del Código Civil, *supra*, sec. 3451.[17]

Ahora bien, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1214 del Código Civil, *supra*, sec. 3401;[18] *Prods. Tommy Muñiz v. COPAN*, 113 DPR 517, 521 (1982). Por otro lado, en cuanto al objeto, el Código Civil dispone que: "pueden ser objeto de contrato todas las cosas que no estén fuera del comercio de los hombres." Además, pueden ser objeto de los contratos aquellos servicios que no sean contrarios a la ley o las buenas costumbres. Artículo 1223 del Código Civil, *supra*, sec. 3421.

En cuanto a la *causa*, nuestro Código Civil establece que:

> "En los contratos onerosos se entiende por causa, para cada parte contratante, la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficencia, la mera liberalidad del bienhechor." Artículo 1226, *supra*, 31 LPRA sec. 3431.

Además, los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los términos de los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, *supra*, 31 LPRA sec. 3375;[19] *Unisys v. Ramallo Brothers*, 128 DPR 842, 850-851 (1991). Así pues, cuando los términos del contrato son claros y no dejan dudas respecto a la intención de las partes, se debe atender al contenido

---

[17] Véase, Artículo 277 del Código Civil de 2020, 31 LPRA sec. 6161.
[18] Véase, Artículo 1238 del Código Civil de 2020, 31 LPRA sec. 9772.
[19] Véase, Artículo 1062 del Código Civil de 2020, 31 LPRA sec. 8983.

literal de lo allí dispuesto. Artículo 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 3471.[20]

**Código de Comercio**

El Código de Comercio de Puerto Rico de 1932, 10 LPRA sec. 1001 *et seq.*, no define lo que constituye un contrato de compraventa, sino solo enumera unos supuestos bajo los cuales el negocio debe reputarse mercantil. *S.M.C. Const. v. Master Concrete*, 143 DPR 221, 228 (1997). En cambio, es el Código Civil el cuerpo legal que define la compraventa como aquel contrato en el cual "uno de los contratantes se obliga entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente". Artículo 1334 del Código Civil, 31 LPRA sec. 3741; *S.M.C. Const. v. Master Concrete*, supra.

En vista de ello, el contrato de compraventa será mercantil cuando "la compraventa de cosas muebles para revenderlas, bien en la misma forma que se compraron, o bien en otra diferente, con ánimo de lucrarse en la reventa". Artículo 243 del Código de Comercio, 10 LPRA sec. 1701. Es decir, en la compraventa mercantil el comprador es guiado por el propósito dual de revender las cosas compradas para obtener un lucro. *Reece Corp. v. Ariela, Inc.*, 122 DPR 270, 276-277. Ausente esta intención, la compraventa carece del "carácter mercantil que la distingue de la del tráfico civil". *Íd.*, a la pág. 277.

En lo que nos concierne, el Artículo 2 del Código de Comercio de Puerto Rico de 1932, 10 LPRA sec. 1002, establece que "[s]erán reputados actos de comercio los comprendidos en este Código, y cualesquiera otros de naturaleza análoga". Por su parte, el Artículo 229 del mismo cuerpo de normas dispone que:

> Se reputará mercantil el préstamo, concurriendo las circunstancias siguientes:
> (1) Si alguno de los contratantes fuere comerciante.

---

[20] Véase, Artículo 354 del Código Civil de 2020, 31 LPRA sec. 6342.

(2) Si las cosas prestadas se destinaren a actos de comercio. 10 LPRA sec. 1651.

Ahora bien, para determinar si una transacción constituye un acto de comercio es necesario que se examine la naturaleza y las circunstancias que rodean el negocio. *Soc. de Gananciales v. Paniagua Diez,* 142 DPR 98, 106 (1996); *Barceló & Co., S. en C. v. Olmo,* 48 DPR 247. No obstante, quien invoque el Código de Comercio "tiene la carga de la prueba sobre su aplicabilidad". *Soc. de Gananciales v. Paniagua Diez,* supra.

**La Prescripción**

La prescripción de las acciones es un asunto de derecho sustantivo, no procesal, que persigue "evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos." *García Pérez v. Corp. Serv. Mujer,* 174 DPR 138, 147 (2008) citando a *González v. Wal-Mart, Inc.,* 147 DPR 215, 216 (1998).[21] Conforme el Artículo 1861 del Código Civil, *supra,* "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley." 31 LPRA sec. 5291. De no existir una disposición especial que determine otra cosa, el tiempo para la prescripción de toda clase de acciones se contará desde el día en que se pudo ejercitar. Artículo 1869 del Código Civil, *supra,* 31 LPRA sec. 5299. En este sentido, el Artículo 1864 del Código Civil, *supra,* establece que las acciones personales que no tengan señalado término especial de prescripción son a los quince (15) años. 31 LPRA sec. 5294.

**III.**

En esencia, los apelantes mediante la discusión conjunta de sus primeros dos señalamientos error, esbozaron que el TPI incidió al analizar la controversia prescriptiva a través del Código Civil,

---

[21] Como es sabido, mediante la Ley núm. 55-2020 se adoptó el nuevo Código Civil de Puerto Rico, y su vigencia se fijó a partir de los ciento ochenta (180) días de su aprobación, es decir, el 28 de noviembre de 2020. Toda vez que los hechos del presente caso tienen su génesis en momentos previos a la vigencia del nuevo cuerpo legal, procede la aplicación de las disposiciones del derogado Código Civil de 1930 y su jurisprudencia interpretativa.

*supra*, sin haber aplicado primero las disposiciones de la Ley núm. 208-1995. Además, indicaron que el foro *a quo* erró al determinar que el Préstamo no era un instrumento negociable cuando este satisfacía plenamente los requisitos de la Sección 2-104(a) de la referida ley. Asimismo, señalaron que el acto por parte del apelado de transferir el Préstamo a FB Leonard confirmaba que el BPPR lo manejaba como un instrumento negociable. Por lo cual, argumentaron que le era aplicable el término prescriptivo de tres (3) años, según disponía la Ley núm. 208-1995 y que la causa de acción expiró el 23 de enero de 2015.

De otra parte, en su tercer y cuarto señalamientos de error, respectivamente, manifestaron que la denegatoria de un *certiorari* no constituía la adjudicación en los méritos ni cosa juzgada. A su vez, reiteraron que existían controversias respecto a la naturaleza del pagaré y sobre pagos realizados a FB Leonard que no fueron reconocidos ni aplicados por el BPPR en el estado de cuenta, por lo que impedía que el pleito se resolviera sumariamente.

De entrada, advertimos que la denegatoria de un recurso de *certiorari* no constituye una adjudicación en los méritos de lo planteado. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023). Dicho esto, tras un análisis de la moción de sentencia sumaria y su respectiva oposición, juzgamos que los apelantes no refutaron adecuadamente los hechos consignados como incontrovertidos por el BPPR en su petitorio sumario. En particular, señalamos que los apelantes solamente presentaron una declaración jurada donde se realizó distintas aseveraciones que carecían de prueba evidenciara, similar al resto de las alegaciones que se manifestaban en el escrito de oposición.

No obstante, enfatizamos que no oponerse a la solicitud de sentencia sumaria, según exige el ordenamiento jurídico procesal, no implica que procederá dictarla obligatoriamente, si existe una

controversia legítima sobre un hecho material, ni que corresponderá dictarla a favor de su proponente, si es improcedente en derecho. *Ramos Pérez v. Univisión,* supra. Por lo que nos corresponde determinar, si en efecto, existe alguna controversia sustancial de hechos esenciales que ameriten la celebración de un juicio plenario, y si el derecho se aplicó correctamente. Esbozado lo anterior, procederemos a discutir en conjunto, el primer, segundo y cuarto señalamiento de error.

En lo que nos ocupa, los apelantes han reiterado que el Préstamo de interés satisfacía plenamente los requisitos de un instrumento negociable, según establecido en la Sección 2-104 de la Ley núm. 208-1995 y que las condiciones impuestas en el mismo no desvirtuaban su negociabilidad. Sin embargo, tras un análisis de la totalidad de los documentos del expediente apelativo estamos convencidos de que el pagaré en cuestión no es un instrumento negociable.

En primer lugar, reiteramos que un instrumento negociable es una promesa u orden incondicional de pago de una cantidad específica; pagadera al portador o a la orden; a la presentación o en una fecha determinada y; **no requiere otro compromiso o instrucción que no sea el pago del dinero**. Sección 2-104 de la Ley núm. 208-1995, 19 LPRA sec. 504.

Esbozado lo anterior, surge que al dorso del Préstamo las partes acordaron varias condiciones.[22] Como se puede observar,

---

[22] Las condiciones convenidas son las siguientes:

CONDICIONES ADICIONALES A LAS ESTABLECIDAS EN EL PAGARÉ

**Cesión; Enmienda.** Los derechos y obligaciones de los suscribientes bajo este Pagaré no podrán ser cedidos, ni en todo ni en parte, pero todos los términos y disposiciones del mismo beneficiarán al Banco y a sus sucesores y cesionarios. Los derechos y obligaciones del Banco bajo este Pagaré podrán ser cedidos, en todo o en parte, sin el consentimiento de los suscribientes. Este Pagaré sólo podrá ser enmendado por otro documento escrito otorgado por ambas partes.

**Jurisdicción.** Este Pagaré está sujeto a, y será interpretado bajo, las leyes del Estado Libre Asociado de Puerto Rico. Los

dichas condiciones se extendían más allá de una mera obligación de pago entre las partes. Esto, en efecto, desvirtuaba el carácter de pago incondicional que es representativo de un instrumento negociable.

Por otra parte, los apelantes argumentaron que la transferencia del título a la agencia de cobro FB Leonard constituía una afirmación por parte del BPPR de que el Préstamo era un

---

suscribientes renuncian a cualquier derecho que tengan a juicio por jurado en cualquier acción o procedimiento para ejercer o defender sus respectivos derechos bajo, o que de alguna manera se relacionen con, este Pagaré.

**Compensación.** El Banco podrá, a su opción, ejercer el derecho de compensación en cualquier momento, y de tiempo en tiempo, antes, en, o después de la fecha de vencimiento de este Pagaré, con respecto a cualquier obligación del Banco para con cualquiera de los suscribientes por concepto de depósitos o cualquier otro tipo de obligación.

**Los suscribientes:**
a) Someterán anualmente estados financieros compilados, revisados o auditados del negocio, firmados por un oficial autorizado de los suscribientes, no más tarde de 120 días después del cierre de año fiscal, según especifique el Banco en su absoluta discreción.

b) Someterán anualmente estados financieros de los garantizadores no más tarde de 120 días posteriores al cierre de año calendario.

c) Mantendrán la cuenta operacional del negocio en el Banco en la cual se cargará el pago acordado de las facilidades crediticias otorgadas y cualquier otro cargo relacionado. De la cuenta no mantener balances necesarios para el cargo, el Banco tendrá derecho a cargar las cuotas vencidas a cuentas relacionadas.

d) Someterán evidencia de la estructura del negocio y certificación anual de *good standing* emitida por el Departamento de Estado de Puerto Rico.

e) Mantendrán su existencia y todos los derechos, poderes, licencias, privilegios y franquicias que posea.

f) Cumplirán con toda ley federal y estatal aplicable, incluyendo, pero sin limitarse a ello, leyes ambientales, de salud y de seguridad y todas las normas y reglamentos relacionados con las mismas.

g) No podrán, sin el consentimiento por escrito del Banco, liquidar o disolver sus activos, realizar cualquier clase de distribución de ganancias, pago de capital social, fusión con otra entidad, préstamos a cualquier persona o entidad o permitir que su condición financiera se deteriore o sufra cambios materiales adversos.

h) Permitirán que el Banco o cualquiera de sus agentes o representantes examinen, resuman y copien sus récords, registros y libros de contabilidad, y que visiten las propiedades de los suscribientes y que discutan con terceras personas los asuntos, finanzas y cuentas de los suscribientes que tengan relación con los otros documentos relacionados con este Pagaré, con el cumplimiento de las cláusulas y condiciones de este Pagaré y los otros documentos relacionados con este Pagaré, de tiempo en tiempo, y según sea razonable.

instrumento negociable transferible por endoso. No obstante, no coincidimos con estos planteamientos. De entrada, es preciso señalar que del expediente no surge documento alguno que acredite que dicho pagaré fue transferido mediante endoso, conforme a la naturaleza de un instrumento negociable. A su vez, según se manifiesta en el Historial de Pagos, el apelado **adjudicó los pagos efectuados por los apelantes desde mayo 2011 a mayo 2016, estando el crédito bajo la administración de FB Leonard**. Del documento haber sido un instrumento negociable, endosado por la agencia de cobro, los desembolsos realizados durante dicho periodo serían inoponibles al BPPR. Sin embargo, **estos fueron acreditados al monto de la deuda que los apelantes continuaron pagando hasta el 20 de mayo de 2019** y que originan la causa de acción presente.

De otra parte, los apelantes arguyeron que existía controversia en cuanto a los fines del préstamo y sobre pagos efectuados y no acreditados a FB Leonard, por lo que no procedía el petitorio sumario. No obstante, los apelantes, aparte de una declaración jurada, no presentaron documento alguno que acreditara sus aseveraciones. Es decir, no desfilaron prueba alguna que controvirtiera la hoja de pagos realizada por el apelado. Además, tampoco presentaron evidencia en cuanto a los "actos de comercio" que realizaron en virtud de dicho pagaré. **Recordemos que, quien invoque el Código de Comercio, *supra*, le recae el peso de la prueba**. A tales efectos, los apelantes no nos pusieron en posición para atender dichos planteamientos.

Así pues, ante las circunstancias previamente descritas resulta forzoso concluir que el Préstamo no era un instrumento negociable ni uno de naturaleza mercantil que le fuera aplicable el término prescriptivo del Código de Comercio de Puerto Rico, *supra*. En consecuencia, resolvemos que era de aplicación el término de

prescripción de quince (15) años que dispone el Código Civil de 1930, *supra.*

A su vez, apuntalamos que resulta inmeritorio el reclamo de los apelantes en cuanto a que transcurrieron los tres años del término prescriptivo. Esto, dado que los apelantes realizaron pagos hasta el **20 de mayo de 2019** y ante el incumplimiento de sus obligaciones fue que el BPPR presentó la demanda de epígrafe el **1 de febrero de 2022**. **Esto, dentro del término de prescripción de tres años que dispone la Ley núm. 208-1995**. Por lo que, si hubiésemos acogido los argumentos de los apelantes, aun así, estos no tendrían razón. Al respecto, recordemos que la Sección 2-118, inciso (i), de la referida ley establece que la prescripción se interrumpirá "por la demanda u otro género de interpelación judicial hecho al deudor, por el reconocimiento de las obligaciones, [...]". Así pues, no podemos avalar los planteamientos de los apelantes de que la causa de acción expiró el **23 de enero de 2015**, cuando estos continuaron realizando pagos hasta el **20 de mayo de 2019**.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones